IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action Number 1:16-cv-581

SUZANNA F. DAILEY
    *Plaintiff,*

v.

NIKOS HECHT
    *Defendant.*

---

## PLAINTIFF'S ORIGINAL COMPLAINT

---

Plaintiff Suzanna F. Dailey ("Ms. Dailey") sues Defendant Nikos Hecht ("Hecht") for damages, and in support alleges:

### I.      INTRODUCTION

1.      Ms. Dailey was 66 years old when, while on vacation and attending a dinner with 20 or so other friends and family, she was assaulted and raped by the much younger Hecht, believed then to be in his early 40s, after he offered to show her the gardens attendant to the restaurant where they were dining. Ms. Dailey and Hecht were not friends, and Ms. Dailey had only met him a few days earlier with her sister, who also attended the dinner with her family and knew the Hecht family.

2.      Ms. Dailey, completely unsuspecting, had no idea of Hecht's plans and proclivities and, thus, was completely shocked and unprepared for what was to happen. She certainly had no

reason to believe that she would be the target of rape by someone who not only appeared polite on the surface and more than 20 years younger than she was, but also while in the company of his family, including his then-wife and young children, as well as his father, and the company of others, including other children, in a quiet vacation setting.

3.      While Ms. Dailey may have felt she was in a safe and idyllic environment, surrounded by friends and family, she could not have been in a more dangerous environment as she became the helpless prey of a vicious and opportunistic predator. As detailed below, Hecht grabbed Ms. Dailey once they were out of eye sight—but still only 100 yards away from where the rest of their group was dining—and pulled her to the ground and viciously raped her.

4.      By this lawsuit, Ms. Dailey seeks compensation for the physical and emotional pain caused by Hecht and such further relief as this Court deems appropriate. By this lawsuit, Ms. Dailey also seeks to prevent other unsuspecting women who may randomly find themselves in Hecht's path from being victimized by Hecht through his violent behavior, which he is unwilling to control.

## II.      PARTIES

5.      Plaintiff Suzanna F. Dailey was and is a resident of Vero Beach, Indian River County, Florida.

6.      Defendant Nikos Hecht is a resident of Aspen, Pitkin County, Colorado, and is subject to the personal jurisdiction of this Court.

7.      All parties to this action are diverse, being residents of different states.

8.      All of the material witnesses other than Ms. Dailey are or were residents of Aspen, Pitkin County, Colorado, at the time of the incident described in the Complaint.

### III.    JURISDICTION & VENUE

9.      Venue is proper in this district pursuant to 18 USC § 1391(1) and 18 USC § 1391(3).

10.      The Court has jurisdiction over this action pursuant to 28 USC § 1332 and the amount in controversy is greater than $75,000.

### IV.    GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS

11.      In March 2014, Ms. Dailey was vacationing in Cabo San Lucas, Mexico, with her sister Jeanne D. Aldinger, her brother-in-law Gerhard Aldinger, her then 15-year-old nephew and his similarly aged friend, and Ms. Dailey's then 91-year-old mother. At the time, Ms. Dailey was 66 years of age.

12.      One evening during their vacation, Ms. Dailey's sister came across Hecht, his then-wife and their children while she was walking on the beach in the El Dorado Community of Cabo San Lucas, Mexico, where Hecht has a vacation home. The Hecht family appeared to be relaxing in their backyard that was adjacent to the beach where Ms. Dailey, her sister and others were walking. Ms. Dailey's sister began speaking with Mrs. Hecht. Their conversation ultimately led to an invitation to have drinks at the Hecht's home during their vacation.

13.      That same night, Ms. Dailey attended the informal social gathering as her sister's guest along with the rest of her family and some other friends. During the informal social gathering, neither she nor her sister had any contact with Hecht other than pleasantries upon entering the home. However, at the end of the evening, when Ms. Dailey was leaving, Hecht addressed her, stating that she was in "good shape" and commented that men liked women with "some meat on

their bones." Ms. Dailey did not respond and that was the end of the exchange. During this informal social get-together, the families agreed to have a dinner at Flora Farm on March 25, 2015.

14.     Flora Farm is a ten-acre organic farm in the foothills of the Sierra de la Laguna Mountain in San Jose del Cabo, Mexico. The food grown from the land is then sold at the Flora Farm Grocery or served by the on-site restaurant. Approximately 21 people were in attendance at this dinner, including Hecht, his father, Andy Hecht, and his stepmother, Hecht's then-wife and their children, Ms. Dailey, her sister Ms. Aldinger, and her sister's family and another family from Aspen that was known to the attendees, as well as Ms. Laura Kaplan of Aspen. Ms. Dailey's only prior contact with Hecht was at his home a few nights earlier at the Hecht's home.

15.     At the time, Ms. Dailey was 66 years old; it is believed that Hecht was then in his early 40's. At the dinner at Flora Farms Ms. Dailey had no further discussions or interactions with Hecht until he assaulted her, as described below.

16.     During the dinner, but before food was served, Ms. Dailey was sitting at the table talking to her sister and her sister's friends. Hecht was talking to other guests, and appeared not to be paying any particular attention to Ms. Dailey. Or so Ms. Dailey thought.

17.     At one point, some of the women walked over to a jewelry store on the premises, leaving Ms. Dailey standing near the table, taking pictures of her surroundings. Hecht asked Ms. Dailey if she had "seen the gardens before" and she indicated that she had not. Hecht extolled their beauty and offered to show Ms. Dailey the gardens. Little did Ms. Dailey know that Hecht was planning something far more sinister than a peaceful walk through the gardens.

18.     Hecht helped Ms. Dailey, a woman more than twenty years his senior, up the path into the gardens. Once they were out of the group's line of sight, he suddenly grabbed the back of

Ms. Dailey's neck with one hand, pulling her forcefully to him while forcing one of her hands onto his erect penis. He then used the force he was exerting on the back of her neck to kiss her mouth, without her permission and without asking for consent. While holding her against her will, and in spite of her attempts to push him away with her hands, Hecht pulled Ms. Dailey to the ground. Once on the ground, he yanked down her shorts and undid his.

19.     Traumatized, shocked, and helpless, Ms. Dailey tried everything to physically stop the stronger and uncontrollable Hecht. She tried to push him away and tried pushing herself away from him and backwards with her hands. Unfortunately, once Hecht had Ms. Dailey on the ground, she was in a losing battle as she was quickly overpowered and overcome with shock and terror.

20.     At this point, Hecht forcefully and painfully vaginally penetrated Ms. Dailey with his penis. He then quickly ejaculated and jumped to his feet, pulling his shorts back up. Hecht rapidly walked away. Laying there in the dusk, Ms. Dailey heard some noise near her but at the time could not identify the source of the noise. She would later find out that, to her horror, there had been child witnesses to the incident.

21.     Hecht's actions, from the moment he initiated non-consensual violent physical contact, to the forced kiss, and ending with the sexual assault and rape of Ms. Dailey, caused Ms. Dailey tremendous physical pain and suffering, emotional distress, and mental anguish. Ms. Dailey continues to suffer the effects of that night. After the assault and rape, Ms. Dailey put her clothes back on and in a state of embarrassment, humiliation, pain and  shock, walked back to the group which included Hecht's wife and his children, as well as her own family. Ms. Dailey told her sister about the rape the next day. At the time, Ms. Dailey did not realize that at least part of the horrific incident was witnessed by her nephew and his friend.

22.     Unbeknownst to Hecht, when he led Ms. Dailey to the secluded spot on the guise of "showing her the gardens," Ms. Dailey's nephew, just barely a teenager at the time, and his young friend had also wandered into the gardens. Unfortunately, at this point, the children were only a short distance from where Hecht raped Ms. Dailey. Ms. Dailey's nephew reported what he witnessed, as best as a young boy could comprehend it, to his mother that same evening, even before Ms. Dailey had the opportunity to report it to her.

23.     Ashamed and embarrassed that this could have happened, and concerned because Hecht was well known in the community, Ms. Dailey did not report the events to the local police, particularly being in a foreign land. She only reported the rape to her sister. Ms. Dailey's sister subsequently informed Hecht's father of what had transpired and that her 15-year-old son witnessed the assault along with his friend.

24.     In the aftermath of this horrific night, upon returning stateside, Ms. Dailey sought psychological treatment for the trauma suffered at Hecht's hands including the shame associated with these violent acts. Her nephew who witnessed the rape also sought therapy as a result of the horrific events.

25.     About 18 months later during the Fall of 2015, Ms. Dailey learned through the media that Hecht was being prosecuted in Aspen, Colorado for assaulting another woman and the controversy surrounding the Pitkin County District Attorney's reported favorable treatment of Hecht in that case. *See Ex-girlfriend Accuses Nikos Hecht of Serious Transgressions in Court Affidavit*, Jason Auslander, Aspen Times, Oct. 10, 2015, attached as Exh. A.

26.     Ms. Dailey also read the coverage of how Hecht's attorneys vilified the alleged victim in that case by impugning her character and motivation for wanting to see him prosecuted

to the full extent of the law. *See New Trial Dates Set for Nikos Hecht*, Chad Abraham, Aspen Daily News, Jan. 5, 2016, attached as Exh. B.

27.     Concerned that law enforcement may not have had the full story on Hecht and concerned that Hecht may get away with his violent behavior and continue to get away with physically and sexually assaulting other women, Ms. Dailey decided to bring the matter of her rape to local Aspen law enforcement authorities. Accordingly, Ms. Dailey reported her rape by Hecht to the Pitkin County Sheriff's Office. Specifically, Ms. Dailey spoke to Sheriff Joe DiSalvo at the Pitkin County Sheriff's Office and asked him to ensure that her report reached the District Attorney's Office. Ms. Dailey then made a point of speaking to the Pitkin County District Attorneys' Office directly several times.

28.     Ms. Dailey has not heard from the District Attorney since her report of her rape to that office. Ms. Dailey recently learned however that Hecht pled guilty to Harassment, to wit, that he "struck, shoved, kicked . . ." the woman victim in question "with intent to harass, annoy or alarm . . ." *See People v. Nikos Hecht*, Case No. 2015M197, County Court, Pitkin County, Colorado, Guilty Plea, Feb. 24, 2016, attached as Exh. C.

29.     Ms. Dailey also learned that upon pleading guilty, Hecht was sentenced to two years of probation and 120 hours of community service for his behavior toward the victim in that case. During the sentencing hearing, Judge Erin Fernandez-Ely, the presiding judge, acknowledged that Hecht put his victim through a night of terror, that Hecht had serious control and power issues, and that Hecht's behavior reflected a pattern in her statements as follows:

> I read the arrest warrant and to me, ***it was a night of terror***. It was a night of terror that lasted two days. It was ***indicative of a pattern***, I thought, in reading it. One of the statements that – well, and then there was a retraction, which is also very typical

in the **cycle of abuse and blaming the victim** and all of those things that we talk
about in this case.

*People v. Nikos Hecht,* Case No. 2015M197, County Court, Pitkin County, Colorado, Hr. Tr. at

24, attached as Exh. D (emphasis added). Judge Fernandez-Ely later followed:

> I think the **obsessive nature** of – of the **power and control and the abuse** that you
> exhibited in what I have as the transcript. I haven't heard it but – and the 113 phone
> calls, I said this before, is **indicative of significant drug abuse** as well.

Exh. D*,* at 25. The judge described Mr. Hecht as a man "who abuses women":

> I think [Mr. Hecht's actions against Ms. Warfel] were abusive. I think that it was
> all the things that domestic violence is about and I do hope that you get something
> out of the treatment that is mandatory and **I do hope that you become a person that
> doesn't abuse women**. I do hope that's what happens.

Ex. D, at 65 (emphasis added). And finally the judge, reflecting on whether to send Hecht to jail

for his conduct toward the woman victim in the case, said the following:

> I think the Court can take into account what it perceives to be **a pattern of abuse**. I
> think I can do that and I have made it very clear that I consider this **not to be an
> isolated instance** . . . So I just wanted to – you know – make sure everybody is on
> the same page that I am going to take a break and I'm going to come back but that
> jail time is actually a possibility, Mr. Hecht, whether I'm treatment-oriented or not.

Exh. D, at 60. Ultimately the judge, who views herself as treatment oriented, decided not to impose

a jail sentence but instead the probationary sentence and controlled substance monitoring.

30.     Ms. Dailey now brings her claims to vindicate her own "night of terror" from the

violence and sexual assault she suffered at the hands of an uncontrollable Hecht.

31.     Ms. Dailey has retained the undersigned counsel and is obligated to pay them their

reasonable attorneys' fees to prosecute this matter.

## V.      CAUSES OF ACTION

### COUNT I

### ASSAULT

32.      Plaintiff adopts and reincorporates the allegations contained in all foregoing paragraphs as if specifically set forth herein.

33.      As detailed above, Hecht assaulted Ms. Dailey.

    a.   Hecht acted either with intent of making contact with Ms. Dailey or with the intent of putting Ms. Dailey in apprehension of such contact;

    b.   Ms. Dailey was placed in apprehension of an imminent contact with her person by Hecht's conduct; and

    c.   Such contact was harmful and offensive.

34.      Hecht's assault of Ms. Dailey was both an illicit act and was against good customs and habits.

35.      Hecht's assault of Ms. Dailey caused her actual damages as well as pain and suffering, mental anguish, emotional distress, as well as moral damages.

36.      Hecht's several acts of violence against of Ms. Dailey caused her actual damages as well as pain and suffering, mental anguish, and emotional distress.

37.      As a result of Hecht's assault, Ms. Dailey suffered moral damages, was subjected to a loss of her right of personality, and an infringement of her moral rights. As a result of these actions by Hecht, as well as others described above, Ms. Dailey incurred moral damages based on three types of injuries:

    a.   Injuries involving social concerns, such as her honor, prestige, and reputation in the community;

b.  Injuries involving her feelings, including her pain and suffering, emotional distress, and mental anguish; and

c.  Physical injuries which had an emotional impact on Ms. Dailey.

## COUNT II

## BATTERY AND SEXUAL ASSAULT

38.     Plaintiff adopts and reincorporates the allegations contained in all foregoing paragraphs as if specifically set forth herein.

39.     Hecht committed three acts of battery on Ms. Dailey.

a.  Hecht acted either with intent of making contact with Ms. Dailey;

b.  Hecht's conduct resulted in at least four instances of offensive and/or harmful contact with Ms. Dailey:

i.  Hecht grabbed Ms. Dailey by the back of the neck;

ii.  Hecht forced Ms. Dailey's hand on his genitals;

iii.  Hecht forced his mouth onto Ms. Dailey's mouth; and

iv.  Hecht penetrated Ms. Dailey's vagina with his penis.

c.  All of Hecht's physical contacts with Ms. Dailey were harmful and/or offensive.

40.     The contacts inflicted would reasonably offend one's sense of personal dignity.

41.     Hecht's several acts of battery against Ms. Dailey were both illicit acts and acts against good customs and habits.

42.     Hecht's several acts of battery against Ms. Dailey caused her actual damages as well as pain and suffering, mental anguish, and emotional distress.

43.     Hecht's several acts of battery against Ms. Dailey caused her to suffer moral damages because Ms. Dailey was subjected to a loss of her right of personality and an infringement of her moral rights. Because of this, Ms. Dailey incurred moral damages based on three types of injuries:

      a.  Injuries involving social concerns, such as her honor, prestige, and reputation in the community;

      b.  Injuries involving her feelings, including her pain and suffering, emotional distress, and mental anguish; and

      c.  Physical injuries which had an emotional impact on Ms. Dailey.

## COUNT III

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

44.     Plaintiff adopts and reincorporates the allegations contained in all foregoing pargraphs as if specifically set forth herein.

45.     Hecht intentionally inflicted emotional distress on Ms. Dailey by engaging in outrageous conduct. Specifically:

      a.  Hecht engaged in extreme and outrageous conduct, including violently and sexually assaulting her in the presence of young children;

      b.  Hecht engaged in such conduct recklessly or with the intent of causing Ms. Dailey severe emotional distress or mental suffering; and

      c.  Hecht's conduct caused Ms. Dailey to suffer severe emotional distress or mental suffering.

46.     Hecht's conduct, starting from his intentional removal of Ms. Dailey from the dinner party, to his physical assault, and culminating in his sexual assault of Ms. Dailey, consists of conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

## VI.     DAMAGES

47.     Ms. Dailey seeks recovery for the following:

    a.   Actual damages, including medical expenses;

    b.   Pain and suffering;

    c.   Mental anguish;

    d.   Emotional distress; and

    e.   All other remedies to which Ms. Dailey is entitled to in law and equity.

48.     Ms. Dailey seeks damages in excess of $75,000 to be determined by a jury.

## VII.     JURY DEMAND

49.     Plaintiff hereby demands a trial by jury on all issues so triable.

Date:  March 10, 2016                                        Respectfully submitted,

*/s/ Maria-Vittoria G. Carminati*
David A. Bovino
BOVINO & ASSOCIATES
600 East Hopkins Ave., Suite 301
Aspen, Colorado 81611
Telephone:  (970) 925-4445
Email:  david@bovinolaw.com

Maria-Vittoria G. Carminati
BOVINO & ASSOCIATES
337 Garden Oaks Blvd., #67701
Houston, TX 77018
Telephone: (281) 826-9552
Email:  giugi@bovinolaw.com

**ATTORNEYS FOR PLAINTIFF**