IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-CV-00581-RBJ

SUZANNA F. DAILEY,

     *Plaintiff,*

v.

NIKOS HECHT,

     *Defendant.*

---

**PLAINTIFF'S MOTION TO PRECLUDE DR. GORTLER FROM TESTIFYING AND OFFERING HIS EXPERT OPINION REGARDING THE IMPACT OF MS. DAILEY'S PRESCRIBED MEDICATIONS ON HER BEHAVIOR**

---

Plaintiff, Suzanna F. Dailey ("Plaintiff" or "Ms. Dailey") moves this Court for an order precluding the expert opinion testimony of David Gortler concerning the effects of aripiprazole (Abilify)–a prescribed antidepressant medication—on Ms. Dailey given that there is no evidence that she was under the influence of Abilify on the night of the rape or that she ever experienced any of the extremely rare impulse control related side effects that Dr. Gortler opines is a possible consequence of using aripiprazole. Indeed, Dr. Gortler offers no opinions whatsoever as to Ms. Dailey, instead speculating from the generalized fact that there is a rare risk of impulse control-related side effects for anyone taking the drug, but, also acknowledged he cannot provide an opinion that Ms. Dailey encountered this problem, or that the combination of her prescription medications had any impact on her behavior, influenced her memory or that she overused any of

her prescribed medications.[1] Because Dr. Gortler cannot provide an opinion as to Ms. Dailey at all, his testimony is unreliable and therefore he should be excluded from testifying at the trial.

## I.    INTRODUCTION

Ms. Dailey filed this lawsuit on March 10, 2016, in response to Defendant Hecht's violent assault and rape, which occurred at a restaurant in Cabo San Lucas, Mexico. Her allegations are straightforward: Ms. Dailey alleges that while attending a dinner party with family, friends and other invited guests in March of 2014, Defendant Hecht invited Ms. Dailey to see the beautiful gardens at the venue; not suspecting any foul play, Ms. Dailey agreed. Once away from the group, Defendant Hecht violently raped Ms. Dailey.[2] Ms. Dailey's minor nephew and his close friend, both of whom also attended the dinner, witnessed Mr. Hecht having intercourse with Ms. Dailey.[3] Defendant Hecht denies having intercourse with Ms. Dailey at all. Notably, Defendant Hecht has admitted to being under the influence of significant amounts of narcotics on the evening in question.[4]

Defendant Hecht has re-victimized and continues to re-victimize Ms. Dailey through his scorched earth approach in this litigation including his "she asked for it" defense and his repeated attempts to sully the character of Ms. Dailey. The report of Dr. Gortler is no exception, littered with blame-the-victim innuendo, yet devoid of any evidence whatsoever that would support a

---

[1] Dr. Gortler Dep. Tr. 216-219 (Feb. 17, 2017) (Rough), Ex. 1. At the time of preparing this motion, Plaintiff is only in possession of the rough transcript, but will provide the final upon receipt. Attached as Exhibit 1 is a copy of the rough transcript of Dr. Gortler.

[2] Ms. Dailey only met Defendant Hecht once before the night she was raped. A few days earlier, the Hecht family invited Ms. Dailey's sister, who was on vacation with Ms. Dailey, to their home for a brief get-together, which lasted approximately one hour. S. Dailey Dep. Tr. 69:9-71:9 (Sept. 28, 2016), Ex. 2; J. Andlinger Dep. Tr. 36:23-37:16 (Sept. 20, 2016), Ex. 3. During the welcome reception and the dinner at Flora Farms, Ms. Dailey had extremely limited contact or conversation with Defendant Hecht. S. Dailey Dep. Tr. 101:22-106:13, Ex. 2; J. Andlinger Dep. Tr. 54:10-16; 59:16-18; 61:19-63:21, Ex. 3.

[3] G.C. Dep. Tr. 59:7-65:11 (Oct. 17, 2016), ECF No 105-1; T.A. Dep. Tr. 97:2-102:13 (Oct. 6, 2016), ECF No 105-2

[4] Nikos testified that he took two or three 5–milligram opiate pills the day of the rape and confirmed he was drinking alcohol that night. Hecht Dep. Tr. 288:5-289:33 (Sept. 29, 2016), Ex. 4. *See also* Notice of Clarification, ECF No. 86.

PLAINTIFF'S MOTION TO PRECLUDE DR. GORTLER FROM TESTIFYING AND OFFERING HIS EXPERT OPINION REGARDING THE IMPACT OF MS. DAILEY'S PRESCRIBED MEDICATIONS ON HER BEHAVIOR
PAGE 2

conclusion that Ms. Dailey actually experienced any side effects, which is why he offers none.

Rather, Dr. Gortler notes generally that such a risk of impulse control side effects exists:

> Evidence for impulse control via dopamine modulation exists both in the medical literature and within the FDA AERS database for aripiprazole, as well as the amphetamine class of drugs, generally and collectively.

> Ms. Dailey was taking a dose of aripiprazole, of 5 mg/day, and the synergistic effect of amphetamine and other stimulants would additively function to further modulate dopamine. Hypersexuality case reports referenced have been reported in patients taking lower doses of aripiprazole than Ms. Dailey's and without other dopamine-modulated drugs.[5]

Merely parroting that there have been a few extremely rare instances of impulse control related side effects in a drug that has been prescribed to almost two million people in 2015 alone does not translate into any basis to conclude that this was Ms. Dailey's experience. On the contrary, there is not a shred of evidence that *Ms. Dailey* experienced any impulse control related side effects including hypersexuality, and Dr. Gortler admitted as much.

Specifically, Dr. Gortler admitted that he lacks the qualifications and data to support his opinions:

- He has not personally participated in any peer-review or clinical studies, research or analysis of Abilify or any other dopamine agonist;[6]

- He has not been involved in the identification or studies involving the pharmacological mechanisms analyzing the adverse or potential adverse outcomes of Abilify on the human body;[7]

- As a pharmacist, none of his patients reported hypersexuality or any other impulse related disorder as a consequence of taking Abilify;[8]

- While at the FDA, he did not present, prepare or participate in any reports relating to the safety, efficacy or side effects of Abilify;[9]

---

[5] Ex. 5, Gortler Report at 26.
[6] Ex. 1, Gortler Dep Tr. at 12; see also Gortler Dep. Tr. at 19-20.
[7] *Id*. at 11-13.
[8] *Id*. at 14-15.
[9] *Id*. and at 17-18.

PLAINTIFF'S MOTION TO PRECLUDE DR. GORTLER FROM TESTIFYING AND OFFERING HIS EXPERT OPINION REGARDING THE IMPACT OF MS. DAILEY'S PRESCRIBED MEDICATIONS ON HER BEHAVIOR
PAGE 3

- All the information relied upon by Dr. Gortler was peer reviewed studies prepared by others and unrelated to Ms. Dailey;[10]

- He admitted that none of Ms. Dailey's doctor or therapist notes that he relied upon in issuing his opinions indicate that Ms. Dailey reported having any impulse control related side effects from taking Abilify;[11]

- He is not aware that any of her healthcare providers diagnosed Ms. Dailey with any impulse related disorder;[12]

- He admitted that he is not a psychiatrist or therapist, that he did not and cannot diagnose Ms. Dailey as he is not qualified to do so;[13]

- Dr. Gortler did not interview Ms. Dailey's psychiatrist, her therapist, any of her family members or event Ms. Dailey, nor did he ask to;[14]

- He does not know whether Ms. Dailey ever took Abilify (as opposed to being prescribed Abilify);[15]

- He is not an expert in the synergistic effects of medications on human behavior with a focus on dopamine modulation (which is what Abilify does);[16]

- Dr. Gortler acknowledged that of the over 1.6 million people prescribed Abilify through the 3rd quarter of 2015, only 198 individuals reported any impulse control related side effects;[17]

- Dr. Gortler admitted that any impulse control related side-effect was rare;[18]

- Dr. Gortler admitted that was only asked to opine of whether hypersexuality was a potential side-effect of Abilify, not that Ms. Dailey actually experienced it;[19]

- He cannot opine whether any side-effect actually occurred with Ms. Dailey, only that it possibly could have;[20]

---

[10] *Id*. at 18-20.
[11] *Id*. at 25-27; *see also* at 29-30, 57 (admitting there is no evidence Ms. Dailey ever reported such side effects).
[12] *Id*. at 29-31.
[13] *Id*. at 29-30.
[14] *Id*. at 31 and 37-40; *see also* Gortler Dep. Tr. at 144 ("Zero communication with anybody.").
[15] *Id*. at 46-49.
[16] *Id*. at 63.
[17] *Id*. at 79-80. Indeed, in Dr. Stripp's report, Plaintiff's rebuttal expert to Dr. Gortler, he opined that the number of those who reported any adverse impulse related side-effect was less than 1% of those prescribed the mediation. Attached as Exhibit 8 is a copy of Dr. Stripp's report.
[18] *Id*. at 80-82.
[19] *Id*. at 97-101; *see also* Gortler Dep. Tr. at 151-52 (Dr. Gortler has no knowledge of whether there were any clinical consequences of any drug interactions that Ms. Dailey was taking; he is opining generally that it could happen).
[20] *Id*. at 102-105; *see also* Gortler Dep. Tr. at 112-113.

- Dr. Gortler does not know whether Ms. Dailey experienced any cognitive deficit or memory loss; [21]

- He has never been qualified to testify in federal or state court.[22]

This lack of evidence that Ms. Dailey experienced any adverse behavioral reaction from any of the medications she was prescribed makes Dr. Gortler's report a blatant effort to make Ms. Dailey into an unworthy plaintiff through unsupported innuendo. Having Dr. Gortler testify that the very rare side-effect from Abilify *may* have occurred here unduly creates the impression that it actually did, when there is not a shred of evidence to support that inference. Thus, Dr. Gortler's report and any testimony would be highly prejudicial and likely to mislead the jury. As detailed below, Dr. Gortler should be precluded from testifying and any opinions that he offers through his report or otherwise should be rejected out of hand as they cannot withstand a *Daubert* challenge.

## II.      STANDARD of LAW

The Court must act as a gatekeeper in ensuring that *Daubert* is followed and that expert evidence is appropriately vetted before admission. *See Goebel v. Denver Rio Grande Western Railroad Co.,* 215 F.3d 1083 (10th Cir. 2000) (reversing district court and finding "while the district court has discretion in the manner in which it conduct its *Daubert* analysis, there is no discretion regarding the actual performance of the gatekeeper function."). The gatekeeping function "'inherently require[s] the trial court to conduct an exacting analysis' of the *foundations* of expert opinions to ensure they meet the standards for admissibility." *Id*. To make that determination, the Court must resolve whether the scientific principles being relied on by the expert are reliable, if he/she has adequate qualifications and whether the testimony will ultimately

---

[21] *Id*. at 199.
[22] *Id*. at 58-59.

be of use to the jury. *People v. Shrek,* 22 P.3d 68, 74 (Colo. 2001). Rule 702 codifies the reliability requirements under *Daubert* and set out the prerequisites for admission of expert opinions: (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine the fact in issue; (2) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the facts. [23]

The trial court must also evaluate under Fed. R. Evid. 403 the risk of undue prejudice posed by unsubstantiated or unreliable expert testimony. The Supreme Court has cited, with approval, Judge Weinstein's admonition that, "[e]xpert testimony can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Daubert,* 509 U.S. at 595.

As a threshold matter, Dr. Gortler has admitted under oath that he is not qualified to opine regarding any potential impact that Ms. Dailey's prescribed medications may have had on her behavior nor can he testify that Ms. Dailey's medications caused or contributed to any actions she may or may not have taken.[24]

---

[23] "We hold that FRE 702, rather than *Fry v. United States,* 293 F. 1013 (D.C. Cir. 1923) is the appropriate standard for determining the admissibility of scientific evidence in Colorado. We hold that under this standard, the focus of a trial court's inquiry should be on whether the scientific evidence is reasonably reliable and whether it will assist the trier of fact, and that such an inquiry requires a determination as to (1) the reliability of the scientific principles, (2) the qualifications of the witness and (3) the usefulness of the testimony to the jury." *People v. Shrek,* 22 P.3d 68, 74 (Colo. 2001).

[24] For instance, there is absolutely no basis for Dr. Gortler, a non-physician pharmacist, to offer his opinion that Ms. Dailey *may have* shoplifted on one occasion because of the medications she was prescribed, or that she abused her prescriptions. *See Textron, Inc. v. Barber–Colman Co.,* 903 F. Supp. 1558, 1564 (W.D.N.C.1995) (stating that "not every opinion offered by an expert is an expert opinion... [and that] an expert's opinion must be an 'expert' opinion (that is an opinion formed by the witness' expertise) rather than simply an opinion broached by a purported expert"). *Id.* Nor is there any basis for him to opine that Ms. Dailey could have memory loss as a consequence of the same. *See id.* There needs to be actual evidence of these links—and there is none—but under no circumstances would he be qualified to connect these dots in any event.

PLAINTIFF'S MOTION TO PRECLUDE DR. GORTLER FROM TESTIFYING AND OFFERING HIS EXPERT OPINION REGARDING THE IMPACT OF MS. DAILEY'S PRESCRIBED MEDICATIONS ON HER BEHAVIOR
PAGE 6

In this case, the proffered expert opinions are not even opinions or conclusions at all, with Dr. Gortler relying on mere suppositions that the drug "may have" impacted Ms. Dailey, but concedes that he has no opinions that they did impact her. Just that it is possible. This fails to satisfy the standards of reliability.[25] Indeed, a review of his report confirms that Dr. Gortler fails to offer a reliable methodology for any opinion and likewise fails to point to a dint of evidence that might allow the jury to conclude that Ms. Dailey did experience hypersexuality or impulse control during the evening at issue. Dr. Gortler's unreliable musings would offer no assistance to the jury, but, instead are offered purely to improperly prejudice the jury. In short, the testimony should be excluded under state and federal law. *See Wagoner v. Schlumberger Tech. Corp.,* 07-CV-244-J, 2008 WL 5120750 (D. Wyo. June 19, 2008);Colo. Const. art II, sec. 25; U.S. Const. amends. V, XIV (the reliability of expert testimony—or lack thereof–also inextricably intertwines principles of due process).

## III.    ARGUMENTS AND AUTHORITIES

Dr. Gortler is a pharmacist and pharmacologist who has never prescribed to, treated, or even examined Ms. Dailey (and is not qualified to do so in any event given he is not a medical doctor). Dr. Gortler never interviewed anyone (including her treating physicians) and failed to review the vast majority of her medical records. This notwithstanding, Defendant Hecht is attempting to use Dr. Gortler's credentials as a Ph.D.—and his credentials alone–to persuade the jury that Ms. Dailey actually was a 64-year-old temptress who preyed upon Defendant Hecht due to uncontrollable sexual urges caused by Abilify. This implication is more than a quantum leap in logic. Dr. Gortler acknowledged that a mere 198 U.S. total cases were reported of individuals who

---

[25] It is Defendant who bears the burden to prove as much. *Ralston v. Smith & Nephew Richards, Inc.,* 275 F.3d 965, 970 n. 4 (10th Cir. 2001). *See Christison v. Biogen Idec Inc.,* 2:11-CV-01140-DN-DBP, 2016 WL 6902706, at *7 (D. Utah Aug. 5, 2016).

experienced impulse control related issues while taking Abilify since the inception of the drug in 2002 through the third quarter of 2015, so in a 14-year period. More than 1.6 million people filled their prescriptions for the drug in 2015 alone.[26]

In the case at hand Dr. Gortler lacks any sufficient facts or data to support any opinion regarding Ms. Dailey. There is no evidence that: Ms. Dailey exhibited any impulse or other related behaviors that night or on any other night, that Ms. Dailey attempted to seduce any of the other males at the dinner party on that fateful night or at any other time, that Ms. Dailey reported or otherwise complained to any person or physician that she was experiencing impulse control related issues or was otherwise experiencing hypersexuality, nor is there any other evidence that coincides with Defendant Hecht's self-serving version of the events (which incidentally is inconsistent with every other witnesses' testimony).[27] The individuals that attended the event all indicated that they saw no abnormal or other improper conduct by Ms. Dailey that evening.[28] Thus, issuing a report merely quoting statistics relating to the experiences of third parties (albeit an extremely small number of them in any event) has no application to the facts of this case.

---

[26] In his rebuttal report, Dr. Stripp notes that there were 167 reported cases in the U.S., and of those, more than 160 of them were associated with reports of compulsive gambling, not hypersexuality, and the vast majority manifesting in male not female patients. Ex. 6 at p. 4, *citing to* US Food & Drug Administration: FDA's Adverse Event Reporting System (FAERS); US Food & Drug Administration Drug Safety Communication. The actual evidence relating to aripiprazole demonstrates that the rare impulse control side-effect of hypersexuality is so unusual that only nine or so instances have been identified in approximately 14 years, and in those reported cases it refers to patients that experience those symptoms on a continuous basis while taking the drug. Ex. 6 at p. 4. Thus, even among those Abilify patients reporting side effects, there is only a 0.0647% chance that the Abilify patient may experience some form of hypersexuality side-effect from taking Abilify. Hardly the portrait painted in (and intended by) Dr. Gortler's report. Ex. 6 at 5.

[29] By example, at page 10 of the report, Dr. Gortler states: "It is my opinion that the modulation of dopamine via the use of aripiprazole either with or without lisdexamfetamine or d-amphetamine can cause impulsive behavior, which includes impulsive hypersexuality." Ex. 5, Report at 10. The problem with this, as well as all of Dr. Gortler's conclusions is that they are intended to cause the jury to conclude that Ms. Dailey experienced hypersexuality when there is not a dint of evidence that she did.

[29] By example, at page 10 of the report, Dr. Gortler states: "It is my opinion that the modulation of dopamine via the use of aripiprazole either with or without lisdexamfetamine or d-amphetamine can cause impulsive behavior, which includes impulsive hypersexuality." Ex. 5, Report at 10. The problem with this, as well as all of Dr. Gortler's conclusions is that they are intended to cause the jury to conclude that Ms. Dailey experienced hypersexuality when there is not a dint of evidence that she did.

Notwithstanding the dearth of evidence or support for Dr. Gortler's hypothesis that Ms. Dailey *may* have experienced this condition, Dr. Gortler is attempting to create the impression in the mind of the jury that the antidepressant Ms. Dailey was prescribed did cause *her* to experience poor impulse control, hypersexuality, sexually inappropriate behavior and heightened sexual appetite resulting in an overwhelming desire to initiate sex with Defendant Hecht, a man she had met for a brief period a few days earlier at another family event.[29] His report suggests that he also intends to testify that the medicines she was prescribed *may have* impacted her memory and other behavior, again without any medical or evidential basis to imply as much, nor any basis for the jury to infer that this occurred here.

The clear intention of using Dr. Gortler's testimony—testimony that is typically imbued with a higher level of reliability given that he's a PhD— is to impugn Ms. Dailey and question the merits of her claim. This highly prejudicial result cannot be permitted given that the purported "expert" and the opinions he holds are devoid of reliable science, actual data or an iota of corroborated evidence. Rather, prior to issuing his report, Dr. Gortler only examined, "Ms. Dailey's abbreviated pharmacy records"[30] and reviewed certain published literature and studies relating to third parties to formulate his opinions. That fact alone serves to foreclose his testimony..

Alternatively, in the event that the Court requires more, Ms. Dailey respectfully requests

---

[29] By example, at page 10 of the report, Dr. Gortler states: "It is my opinion that the modulation of dopamine via the use of aripiprazole either with or without lisdexamfetamine or d-amphetamine can cause impulsive behavior, which includes impulsive hypersexuality." Ex. 5, Report at 10. The problem with this, as well as all of Dr. Gortler's conclusions is that they are intended to cause the jury to conclude that Ms. Dailey experienced hypersexuality when there is not a dint of evidence that she did.

[30] Dr. Gortler agreed in deposition that he can only talk about the side effects that these medications possibly have on the population *generally*; he has no evidence that the highly remote and unlikely chance that of any impulse control related issues being at play her on the part of Ms. Dailey due to Abilify. To the extent that Defendant wishes to link the general population to Ms. Dailey in particular, he is required to bring forward objective science and data to demonstrate ensure that the jury receives something other than speculation intended Ms. Dailey experienced this side-effect, which he has failed to do. To permit the testimony absent any credible evidence that the behavioral impact occurred would be highly prejudicial and contrary to the legions of cases setting forth the standard for admissibility of expert testimony.

that this Court hold a hearing to provide Plaintiff with an opportunity to expose the failings of Defendant Hecht's purported expert.

### A. Defendant's Expert Lacks the Qualifications Required by Colorado and Federal Law

Dr. Gortler is a pharmacist and pharmacologist. *Expert Disclosure* at 1. He is not a physician. He is not a psychologist or a psychiatrist. *See Wagoner v. Schlumberger Tech. Corp.,* 07-CV-244-J, 2008 WL 5120750 (D. Wyo. June 19, 2008) (two experts in the field of biomechanics were not allowed to testify regarding the nature and causation of the plaintiff's alleged brain injuries because neither were medical doctors, neither had any medical training, neither treated the plaintiff, and neither examined him.)

These deficiencies are compounded by the exceptionally limited fact based review he performed were he even qualified to do so. Dr. Gortler never sought to examine or interview Ms. Dailey, or anyone else. Dr. Gortler has no clinical experience prescribing medication as a psychiatrist or the like, reviewing medical records or otherwise diagnosing patients. He likewise has performed no research of analysis in this area, to wit: the behavioral modifications associated with Abilify.

And while Dr. Gortler opines broadly on the impact of various medications on behavior, creating the implication that the medication impacted Ms. Dailey in this manner, he acknowledges that there is no evidence that it did. In short, Dr. Gortler does not have the qualifications necessary to testify regarding the effects of medication on Ms. Dailey in particular and conducted no such analysis in any event. *See Wagoner v. Schlumberger Tech. Corp.,* 07-CV-244-J, 2008 WL 5120750 (D. Wyo. June 19, 2008); *Wade–Greaux v. Whitehall Labs., Inc.,* 874 F. Supp. 1441, 1476 (D.VI.) (a witness educated as a pediatrician, pharmacologist, and toxicologist was not qualified to testify

regarding the cause of birth defects, because he had merely reviewed selected literature on the subject for the purposes of litigation), *aff'd without op.,* 46 F.3d 1120 (3d Cir.1994).

### B. Defendant's Expert's Testimony Is Unreliable

Dr. Gortler's testimony regarding the impact of the various medications Ms. Dailey was prescribed is inherently unreliable[31] for at least three reasons. *First,* as previously stated, Dr. Gortler has absolutely no knowledge–firsthand or otherwise–of whether Ms. Dailey took all, some or none of the medications she was prescribed during the time period at issue and if so, when and how much. *Second,* Dr. Gortler has no knowledge–firsthand or otherwise–of whether, to the extent that Ms. Dailey was taking any of the medications, she ever reported experiencing any of the side effects he refers to in his in report. He acknowledged that he is not aware of any evidence demonstrating that she did. That void of knowledge is critical because the statistical possibility that any of Ms. Dailey's prescriptions caused the side effects that Dr. Gortler describes is far less than 1%.[32] *Third,* Dr. Gortler has no experience diagnosing, prescribing or otherwise treating the underlying medical conditions of any patient including Ms. Dailey, and consequently cannot reliably explain the intersection of those conditions and the various medications she takes.

As is abundantly apparent, any effort by Dr. Gortler to opine on the possible effects of Ms. Dailey's medications on her behavior is nothing more than unreliable, unsubstantiated, and

---

[31] It is noteworthy that Dr. Gortler tries bolster his opinions by providing "examples" in literature that he believes show the potential behavioral impact that he opines Ms. Dailey would have experienced. But Dr. Gortler's effort is entirely based on speculation as he is unable to compare Ms. Dailey's circumstances with those of any of the individuals he discusses because he is entirely ignorant to the details of her life, her routines, her behavior, her illnesses and her coping mechanisms. Simply put, Dr. Gortler is entirely unable to connect the dots, and even if he had actually obtained the information and qualifications necessary to do so, would still fail because Ms. Dailey *never* experienced the behavioral influence that Dr. Gortler speculates into existence.

[32] Per reports released by the FDA, the percentage of Abilify patients where hypersexuality is a reported side-effect is only 0.06, or less than one tenth of one percent of the patients *reporting side effects,* and thus far less when compared to the total number of prescribed users of the drug. Ex. 6 at 5.

uneducated speculation. Accordingly, it should be precluded. *Cabrera v. Cordis Corp.* 134 F.3d 1418, 1423 (9th Cir 1998) ("By Blais's own characterization, he is relying on underground knowledge, untested and unknown to the scientific community. An opinion based on such unsubstantiated and undocumented information is the antithesis of the scientifically reliable expert opinion admissible under *Daubert* and Rule 702."); *see also Autotech Technology Ltd. Partnership v. Automationdirect.com*, 471 F.3d 745, 749 (7th Cir. 2006) ("To qualify as an expert on software, an expert should, at a minimum, examine the product and software upon which the expert bases his opinion. Accordingly, we conclude that the district court properly found that Peter Martin was an unqualified expert and that his opinion was unreliable."); *Mitchell,* 165 F.3d at 782 (quoting *In re Paoli R.R. Yard PCB Litigation,* 35 F.3d 717, 745 (3d Cir.1994)) (Under *Daubert,* "any step that renders the analysis unreliable... renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology."); *Rosen v. Ciba–Geigy Corp.,* 78 F.3d 316, 318 (7th Cir.1996) (It is critical that the district court determine, "whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist.").

### C.  Defendant's Expert's Testimony Will Mislead the Jury

Because Dr. Gortler lacks the appropriate foundation to testify regarding the effect of the medications prescribed to Ms. Dailey in particular on her behavior, if any, or whether she experienced any of the side effects outlined in his report, his testimony is of no assistance to the jury and worse will improperly mislead the jury. This case is not about extremely rare instances of impulse control nor is it a suit against the manufacturer of Abilify claiming any harm from its use. This case is about the defendant brutally raping Ms. Dailey and Defendant Hecht will use any modality or method he can to distract from the actual facts. Given that there is no evidence to

support any adverse consequence here, Defendant Hecht is not entitled to, through smoke and mirrors, distract from the actual merits of this case. That is precisely what he is attempting to do through the use of Dr. Gortler.

Defendant Hecht's efforts to fabricate issues and questions is an impermissible attempt to confuse the jury with the hope that Ms. Dailey's credibility will be called into question. That effort runs afoul of the most basic rules and certainly distills the conclusion that this expert will not aid the jury in its determination. The warnings attendant to any medication are written for consumers and using Dr. Gortler to expound on that, inject his commentary and speculate regarding how Ms. Dailey may have acted as a consequence of being prescribed those medications is of no use to the jury—particularly, as here, where there is no evidence or analysis by this expert to demonstrate that that was the case. *Am. Family Mut. Ins. Co. v. Techtronic Indus. N. Am., Inc.,* CIV.A. 12-2609-KHV, 2014 WL 2196416, at *3 (D. Kan. May 27, 2014) (holding that where manual listed warning is language intended for consumer, issues were within the common understanding of the jury and an expert would not aid in that process).

## IV.   CONCLUSION

Wherefore Ms. Dailey respectfully requests that this Court enter an order precluding Dr. Gortler from offering his expert opinions at trial, or, alternatively requests that this Court set a hearing to make a determination of his fitness to offer the same.

DATED March 2, 2017.

Respectfully submitted,
By */s/ Maria-Vittoria G. Carminati*
Maria-Vittoria G. Carminati
David A. Bovino
BOVINO CARMINATI LLC
600 East Hopkins Ave., Ste. 301
Aspen, CO 81611
Phone: (970) 925-4445

Fax: (970) 925-5333
david@bovinolaw.com
giugi@bovinolaw.com

Jennifer Altman
PILLSBURY WINTHROP SHAW
PITTMAN LLP
333 SE 2nd Avenue, Suite 2000
Miami, FL 33131
Phone : (786) 913-4880
Fax : (786) 913-4901
jennifer.altman@pillsburylaw.com

ATTORNEYS FOR PLAINTIFF

### CERTIFICATE OF CONFERENCE

Counsel for Plaintiff conferred with counsel for Defendant Hecht and this motion is opposed.

*/s/ Maria-Vittoria G. Carminati*
Maria-Vittoria G. Carminati

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 2, 2017, a true and correct copy of the foregoing document was filed via the CM/ECF system, which caused it to be served upon the following by email:

*Counsel for Defendant, Nikos Hecht*
Michael D. Plachy, Esq.
Douglas B. Tumminello, Esq.
LEWIS ROCA ROTHGERBER CHRISTIE LLP
1200 Seventeenth Street, Suite 3000
Denver, CO 80202-5835
mplachy@lrrc.com
dtumminello@lrrc.com

Marci G. LaBranche
David M. Tenner, Esq.
Shanelle N. Kindel, Esq.
RIDLEY, MCGREEVY & WINOCUR, P.C.
303 16th Street, Suite 200
Denver, CO 80202
labranche@ridleylaw.com
tenner@ridleylaw.com
kindel@ridleylaw.com

*/s/ Maria-Vittoria G. Carminati*
Maria-Vittoria G. Carminati