IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 16-cv-00581-RBJ

SUZANNA F. DAILEY,

    Plaintiff,

v.

NIKOS HECHT,

    Defendant.

---

ORDER re POST-TRIAL MOTIIONS

---

    This order addresses (1) plaintiff's motion for a new trial, and (2) plaintiff's combined objections to defendant's bill of costs and motion for waiver of a supersedeas bond on appeal. The motions have been fully briefed.

## BACKGROUND

    Alleging that she was sexually assaulted by Nikos Hecht during a dinner party in Cabo San Lucas, Mexico in March 2014, Suzanna Dailey sued Mr. Hecht asserting claims of assault, battery and intentional infliction of emotional distress. Federal jurisdiction was based on diversity of citizenship. The case was tried to a jury May 16-19, 2017, resulting in the jury's determination that Ms. Dailey had not proved any of her three claims, and that the defendant had established that their encounter was consensual. Jury Verdict, ECF Nos. 200 (unredacted), 201 (jurors' names redacted).

1

Final Judgment was entered in favor of the defendant on May 23, 2017, and as the prevailing party, Mr. Hecht was awarded his reasonable costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1. ECF No. 202. Mr. Hecht submitted a bill of costs in the amount of $182,518.07. ECF No. 203. However, the Clerk taxed costs in the amount of $45,849.89. ECF No. 207.

**PENDING MOTIONS – FINDINGS AND CONCLUSIONS**

A. <u>Plaintiff's Motion for a New Trial, ECF No. 206</u>.

In her combined motion and brief Ms. Dailey requests a new trial on grounds that several pretrial and trial evidentiary rulings "prejudiced Plaintiff's ability to tell her story." ECF No. 206 at 1. The problem was that the story both parties wanted to tell included a great deal of "dirt" that they had dug up on each other. For example, Ms. Dailey wished to show the jury that Mr. Hecht had a history of drug problems, extramarital affairs, and abusive relationships. Mr. Hecht wished to show the jury that Ms. Dailey had a history that included securities fraud and shoplifting.

The Court made it clear before and during the trial that it would not permit the trial to be sidetracked by marginally relevant (at best) and inflammatory evidence, and that the case would be tried on the facts of what happened that evening in Mexico. With that context in mind, I consider plaintiff's arguments for a new trial.

1. <u>Rulings during trial</u>.

First, Ms. Dailey complains that she was precluded from introducing evidence that Mr. Hecht had taken the opioid Percocet that evening, and that in the past, he had been an abuser of opioids and other drugs. She wished to use evidence of his "drug use" to challenge his ability to

recall the events of the alleged assault. But she admits that the Court informed plaintiff's counsel (before trial and, as I recall, again during the trial) that plaintiff could introduce such evidence if she had medical evidence that his opioid use could affect his memory. She produced no medical evidence. Essentially plaintiff's counsel hoped the jury would infer that the type and amount of drugs Mr. Hecht consumed that day or before that day would have impaired his memory of the events that took place at the dinner party. Such an inference drawn by lay juror would amount to pure speculation.

Second, she complains that she was precluded from introducing evidence that Mr. Hecht had a "mistress" to whom he had confessed that he hated his wife, which plaintiff believes would have contradicted his testimony that his was a close family. The one statement doesn't necessarily contradict the other. Mr. Hecht's family includes numerous individuals other than his wife, and several of them were present with him during the vacation in Cabo and the dinner party. Moreover, other evidence of the unhappy relationship between Mr. Hecht and his wife was admitted. Plaintiff's desire to introduce the specific statement made to his mistress was just one of several attempts plaintiff made to put before the jury Mr. Hecht's relationship with a woman named Brooke Warfel with whom he had engaged in an extra-marital affair, but who had also accused Mr. Hecht of abusive conduct.[1] To any extent that the statement could be viewed

---

[1] Ms. Warfel, who has been described variously as Mr. Hecht's mistress and as his former girlfriend, sued Mr. Hecht in the same month that Ms. Dailey sued Mr. Hecht. *See Warfel v. Hecht,* No. 16-cv-00686-MSK-KLM (D. Colo.). Represented by the same attorneys who represented Ms. Dailey, Ms. Warfel asserted claims of assault, battery, intentional infliction of emotional distress, false imprisonment, negligent infliction of emotional distress, and negligence against Mr. Hecht. Mr. Hecht, represented by the same attorneys who represented him in the *Dailey* case, asserted counterclaims for civil theft (two counts), conversion (two counts) and unjust enrichment. The two cases were litigated in parallel, and both were highly adversarial to say the least. That perhaps helps to explain plaintiff's repeated efforts to bring Mr. Hecht's troubles with Ms. Warfel into the *Dailey* case. The *Warfel* case was recently settled and dismissed.

as relevant to the credibility of his testimony that his was a close family, as opposed to being improper character evidence, my judgment was and still is that its probative value would be substantially outweighed by a danger of unfair prejudice.

    2. Impeaching deposition testimony.

Mr. Hecht apparently testified in his deposition that he had never hurt or threatened a woman. Ms. Dailey wanted to impeach the deposition testimony with evidence that Mr. Hecht had been in an abusive relationship with Ms. Warfel. Had he testified at trial that he had never hurt or threatened a woman, the door would have been opened, as the evidence arguably would have impeached the credibility of his trial testimony. But there was no such trial testimony, nor was the deposition put in evidence under Fed. R. Civ. P. 32(a)(3) (the deposition of a party may be used for any purpose). As such, this was improper impeachment and improper character evidence. The fact, if it was a fact, that Mr. Hecht had in the past been verbally or physically abusive to Ms. Warfel has no apparent relevance to whether his sexual contact with Ms. Dailey in March 2014 was consensual, other than as it relates to his alleged character trait of abusing women. But to any extent it could be said to be relevant for a legitimate purpose other than evidence of Mr. Hecht's character, my judgment was and is that its probative value is substantially outweighed by the danger of unfair prejudice.

    3. Explanation of plaintiff's delay in accusing Mr. Hecht.

The defense introduced evidence that shortly after the incident Ms. Dailey met with a lawyer and then burned the shorts she was wearing when the alleged assault occurred. Ms. Dailey did not accuse Mr. Hecht of assault for many months thereafter. Ms. Dailey complains that she was not permitted to explain the "delay" in coming forward. I do not agree.

4

Ms. Dailey explained that she had met with a lawyer. She explained why she burned her shorts. She and her psychologist testified about the trauma she experienced from the incident. As for the delay, Ms. Dailey wished to explain that it was only after she read in the paper about Ms. Warfel's allegations about Mr. Hecht's abuse that she decided to come forward. She was permitted to testify that she decided to come forward after she read about Mr. Hecht in the paper, and that she called both the Aspen Sheriff and the district attorney's office to report her incident with Mr. Hecht. The Court determined that permitting her to go further and introduce the specifics of the relationship between Mr. Hecht and Ms. Warfel was improper for the reasons described above.

4. <u>Hearsay testimony</u>.

This concerns testimony elicited by the defense that when Ms. Dailey's sister, Jeanne Andlinger, described the assault of Ms. Dailey to three other people, she did not use the word "rape." Ms. Dailey characterizes her sister's statements as "quintessential hearsay." ECF No. 206 at 17. I disagree. It is an out of court statement by the sister, to be sure, but it was not offered to prove the truth of the matter asserted in the statement. Mr. Hecht was not introducing the statement to prove that he had assaulted Ms. Dailey.

Defendant states that the statement was offered to contradict testimony from Ms. Andlinger that was elicited by plaintiff. *See* Response, ECF No. 209, at 12-13. In my view, the statement was also relevant for a different non-hearsay purpose, i.e., to show the words that were used by Ms. Andlinger when she described the assault to others. Bear in mind, as the record will reflect, that from the original complaint through virtually every pleading filed on behalf of the plaintiff and repeatedly at trial plaintiff and her lawyers accused Mr. Hecht of "rape." Ms.

5

Andlinger was present at the dinner party but did not witness the incident. Later in the evening she heard that something had occurred between Mr. Hecht and Ms. Dailey, and she had a conversation with Ms. Dailey about what had happened the next day. The absence of the word "rape" in subsequent statements to third persons could give rise to a reasonable inference that when Ms. Dailey told her sister what happened, she did not indicate that she had been raped.

    5. Conclusion.

Even with the benefit of hindsight I do not find that the subject evidentiary rulings were erroneous, or that if there was error, it was of such significance to have likely affected the outcome of the trial. Certainly the credibility of both parties' testimony was at issue. But there was plenty of evidence that cast Mr. Hecht's behavior that evening and at other times in a bad light and that potentially affected one's perception of his credibility. Also, there was evidence in addition to Mr. Hecht's testimony from which reasonable jurors could find that Ms. Dailey's version of what occurred was not credible, including the testimony of Ms. Dailey herself and the testimony of two teenage boys who claimed to have witnessed significant portions of the contact between Ms. Dailey and Mr. Hecht. I am satisfied that both parties received a fair trial, and accordingly, the motion for a new trial is denied.

    **B. Objection to the Award of Costs.**

As indicated about, the Court awarded Mr. Hecht, the prevailing party, his reasonable costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1. Ms. Dailey asks the Court to vacate that award, noting that district courts have discretion not to award costs to the prevailing party in certain circumstances. I agree that this Court can waive costs so long as it provides a valid reason for doing so. *See, e.g., Cantrell v. International Brotherhood of*

*Electrical Workers, AFL-CIO, Local 20121,* 69 F.3d 456, 459 (10th Cir. 1995). Just this week I awarded no costs to a defendant that prevailed on a summary judgment motion where the plaintiff was indigent and the legal issues were close and difficult. *Nesbitt v. FCNH, Inc.,* No. 14-cv-00990-RBJ, ___WL____ (D. Colo. Oct. 17, 2017).

However, those factors do not apply here. The Court has no evidence that would establish that Ms. Dailey is indigent. She admits to receiving $35,000-$45,000 annually from a trust and her brother's company, and that she lives in her sister's house rent free. Although the Court does not know much about her other sources of support, she was vacationing in a luxurious Cabo resort and dining at an exclusive restaurant when the incident occurred. Moreover, an astonishing amount of time and resources was expended by both sides in this case.

Also, there were no close or difficult legal issues. The case turned on a simple, albeit hotly disputed, question of fact – was the parties' encounter consensual. Whether the jury thought the factual issue was close or difficult is something we can never know. It is a fact, however, that the jury not only found that Ms. Dailey had not proven any of her claims, but it also (unnecessarily) found that Mr. Hecht had proven his affirmative defense of consent.

The Clerk cut the amount of costs taxed to approximately 25% of the amount requested. Nevertheless, Ms. Dailey objects to some of the costs that were awarded:

- She objects the inclusion of $1,734.60 for "real time transcripts," claiming that they were not necessarily obtained for use in the case. However, the both sides ordered real time, and plaintiff cited the real time "transcripts" in her motion for a new trial.[2]

---

[2] Defendant states that he extended a written settlement offer to the plaintiff, and when that was rejected, he made a written offer of judgment more than 14 days before trial under Fed. R. Civ. P. 68. ECF No. 210 at 7. Assuming as I do, and as defendant implies, that the offer of judgment was for some monetary

7

- She objects to hotel bills incurred by the defense lawyers while taking depositions in New York and Aspen, arguing that the Denver GSA rate of $237 should have been used. She does not, however, cite any authority for the proposition that the Court must use the Denver GSA rate or any GSA rate for lawyers' lodging. *See Phillips v. Duane Morris, LLP,* No. 13-cv-01105-REB-MJW, 2014 WL 7051722, at *5 (D. Colo. Dec. 12, 2014)(declining to limit litigants' hotel costs to the GSA rates applicable to witnesses). She has not shown that the rates billed to the defendant were not market rates, nor does she inform the Court of the hotel bills paid by her own lawyers at the same depositions. Moreover, the Clerk did discount the rates requested by the defendant, and I have no basis to find that the discounted rates he taxed were unreasonable.
- She objects to the costs incident to the depositions of two individuals, Aspen Sheriff DiSalvo and Deputy Meritt, asserting that they mostly covered matters relevant to *Warfel v. Hecht* (she inadvertently says *Warfel v. Dailey*). However, as I noted in denying her motion for a new trial, it was Ms. Dailey and her lawyers who were trying to introduce Mr. Hecht's relationship with Ms. Warfel into this case. The plaintiff noticed the two depositions and did so jointly for both the *Warfel* and the *Dailey* cases. As such, I find that the costs incident to those two depositions were necessarily incurred and were reasonably taxed.

Having reviewed the costs taxed (and also those rejected) by the Clerk, I find no basis to reduce the award.

---

amount, then because plaintiff recovered nothing at trial, her rejection of the offer of judgment would be another basis on which the real time costs what were incurred during the trial were properly taxed. *See* Fed. R. Civ. P. 68(d).

Finally, Ms. Dailey asks the Court to stay execution of the judgment without requiring her to post a supersedeas bond on appeal. As she notes, however, the purpose of a supersedeas bond is to protect the successful litigant by securing the full amount of a money judgment while a case is on appeal. ECF No. 208 at 2. Here, there is no money judgment in favor of the defendant other than the award of costs. Ms. Dailey provides no good reason for the Court to waive the posting of a bond for the amount of the costs. While she again asserts that she is "unable to post a full bond . . . because the costs as currently taxed amount to a greater sum than Ms. Dailey's annual income," she does not inform the Court as to what a bond would actually cost her, nor does she provide any convincing evidence that she could not manage to post an acceptable bond if she chooses to appeal but wants to stay execution on the costs.

## ORDER

1. ECF No. 206, plaintiff's motion for a new trial, is DENIED.

2. ECF No. 208, plaintiff's motion to vacate the award of costs and to grant a stay of execution without the posting of a supersedeas bond, is DENIED.

DATED this 20th day of October, 2017.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge